Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3675 | **DATE** | 10/18/2000 |
| **CASE TITLE** | Dean Foods vs. Eastman Chemical Co.,etal | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)    ☐ General Rule 21    ☐ FRCP41(a)(1)    ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Defendants' motion to transfer (7-1), 8-1), 15-1, 2, is granted. The Clerk of the Court is directed to transfer the above cause of action to the U.S. District for the Northern District of California. Any pending motions are moot. The status hearing set for 12/1/00 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | OCT 19 2000 date docketed | |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | ED-7 FILED FOR DOCKETING 10/18/2000 | |
| GL courtroom deputy's initials | | 00 OCT 19 AM 8: 19 Date/time received in central Clerk's Office | GL date mailed notice mailing deputy initials |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DEAN FOODS COMPANY, et al., )
)
Plaintiffs, )
)
v. ) No. 00 c 3675
)
EASTMAN CHEMICAL COMPANY, et al., )
)
)
Defendants. )

MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, Chief Judge:

Plaintiffs, Dean Foods Company, et al. brought a complaint against defendants, Eastman Chemical Company, et al. alleging a global conspiracy to fix and inflate the price of, and allocate shares for sorbates, a food preservative - which is sold to customers in the United States and throughout the world - in violation of section 1 of the Sherman Act, 15 U.S.C. §1. Presently before us is defendant CNA Holdings, Inc.'s (formerly HNA Holdings, Inc. and Hoechst Celanese Corp.) ("CNA") and defendant Nutrinova, Inc.'s ("Nutrinova") motion to transfer this case to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §1404(a).[1] As explained below, we grant defendants' motion to transfer.

## BACKGROUND

Plaintiffs in this case - Dean Foods, Inc. ("Dean Foods"), Kraft Foods, Inc. ("Kraft Foods"), and Ralston Purina Co. ("Ralston Purina") - allege that they purchased sorbates from defendants

---

[1]Defendants Daicel, (USA) Inc. ("Daicel") and Eastman Chemical Co. ("Eastman") have also joined in this motion to transfer. Defendants Ueno Fine Chemicals Industry, Ltd. ("Ueno") and Chisso Corporation ("Chisso") have not joined in this motion, but for simplicity, we refer to this motion as "defendants" motion.

during the period of an alleged conspiracy committed by defendants. The corporate headquarters of plaintiffs Dean Foods and Kraft Foods are located in Franklin Park and Northfield, Illinois, respectively. Ralston Purina is located in St. Louis, Missouri. Two of the plaintiffs allegedly purchased sorbates in the Northern District of Illinois, among other locations.

Defendant CNA, a Delaware corporation having its principal place of business in New York, and defendant Nutrinova, a Delaware corporation having its principal place of business in New Jersey, sellers of sorbates here in the United States, are wholly owned subsidiaries of defendant Hoechst AG ("Hoechst"), a producer and seller of sorbates, which is a German corporation with its principal place of business in Germany. Defendant Daicel, a California corporation, has its principal place of business in New Jersey, and defendant Eastman, a Delaware corporation, has its principal place of business in Tennessee and manufactures sorbates in Texas.

Six actions alleging the same conspiracy against defendants (now consolidated into one class action suit), have been underway in the Northern District of California for approximately one and one-half years. In re Sorbates Direct Purchaser Antitrust Litigation, Master File No. C 98-4886 ("Direct Purchaser Actions"). That consolidated action is now before the Honorable Charles A. Legge. However, four groups of manufacturer-defendants, including Hoechst, Daicel and Eastman, have partially settled with the plaintiff class and pled guilty to conspiracy charges and anti-trust violations.[2]

Defendants now move to transfer this case to the Northern District of California, emphasizing that it is in the best interest of justice to avoid duplicative proceedings in two different districts.

---

[2] Defendants Ueno and Chisso have not settled with the plaintiffs in the pending class action suit in San Francisco and have filed motions to dismiss with Judge Legge which are continued pending further discovery. (Def. Motion p. 4).

2

## DISCUSSION

28 U.S.C. §1404(a) governs transfer of venue and provides that:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Section 1404(a)'s general purpose is to prevent avoidable "waste of time, energy, and money, as well as to protect litigants, witnesses, and the public against inconvenience and expense." *Van Gelder v. Taylor*, 621 F.Supp. 613, 618 (N.D. Ill. 1985). We may transfer venue pursuant to 28 U.S.C. §1404(a) if defendants demonstrate that (1) venue is proper in our district; (2) venue is proper in the Northern District of California; and (3) transfer will best serve the convenience of the parties and witnesses as well as the interest of justice. *See SRAM Corp. v. SunRace Roots Enter. Co.*, 953 F.Supp. 257, 259 (N.D.Ill.1997). Because assigning weights to the pertinent circumstances for and against transfer necessarily involves case-by-case determination, the decision whether to transfer is in the district court's sound discretion. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). In this case, the parties do not dispute that venue is proper in this district as well as in the Northern District of California. Thus, the sole remaining issue is whether transfer to California enhances the convenience to the parties and witnesses and promotes the interest of justice.

Defendants vehemently argue that adjudication of this matter here in Illinois is not appropriate. In making this determination, we consider a number of private and public factors. The first private interest we consider is the plaintiffs' choice of forum. Generally, a plaintiff's choice in selecting a forum is entitlted to substantial weight. *Eugene v. McDonald's Corp.*, Case No. 96c1469, 1996 U.S. Dist. Lexis 10193, *4 (N.D. Ill. July 17, 1996) (Aspen, C.J.). However, we discount the importance of the plaintiff's chosen forum if the forum lacks any significant

connection to the claim. *CoolSavings.com, Inc. v. IQ.Commerce Corp.*, 53 F.Supp.2d 1000, 1005 (N.D. Ill. 1999) (Aspen, C.J.).

Two of the three plaintiffs, Kraft Foods and Dean Foods, have their headquarters near Chicago, and many of their officers and employees live in or near Illinois. The third plaintiff, Ralston Purina, is located in St. Louis, which is approximately 300 miles away. Defendants have no real connection to the Northern District of Illinois other than allegedly selling sorbates in this district, among many others, and there is question as to whether the events underlying the cause of action primarily occurred in Illinois. Plaintiffs chose this forum, but their choice of an Illinois forum "appears to be based largely on plaintiffs' own convenience rather than on any significant connection to the cause of action." *See Herdlein Technologies, Inc. v. Century Contractors, Inc.*, Case No. 91c6664, 1992 U.S. Dist. Lexis 1184, *12 (N.D.Ill. Feb.4, 1992) (Aspen, J.). The relevant inquiry in this case is whether a "global conspiracy" in fact existed, the location of which is precisely that - global. Plaintiffs claim that the alleged conspiracy took place all over the world. Accordingly, in the absence of a clear indication that the cause of action bears any significant relationship to Illinois, plaintiffs choice of forum is not enough by itself to prevent transfer. *CoolSavings*, 53 F.Supp.2d at 1005.

Next, we look at the situs of the material events. While some of the material events occurred in this district - plaintiffs claim that one meeting occurred between Dean Foods and one of the alleged conspirators concerning sorbate purchases here in the Northern District of Illinois and generally allege that they were injured here as a result of paying inflated conspiratorial prices for sorbates - we recognize that most of the events giving rise to this cause of action took place all over the country and the world, where defendants sold and produced sorbates. Plaintiffs allege a global conspiracy, stating: "the events giving rise to this cause of action took place all over the world, including secret meetings and discussions in Japan, Europe and the United States, . . . ."

4

(Pl. Op. p.7). There is no indication that Chicago was the site of the events that furthered this conspiracy, but at the same time, there is no indication from defendants that most of the material events occurred in California or any singular place. We conclude therefore that the location of material events does not weigh heavily in favor of either location.

The third factor we consider is the relative ease of access to sources of proof, including the power of the Court to compel the appearance of witnesses and the costs of obtaining the attendance of those witnesses. *CoolSavings*, 53 F.Supp.2d at 1006. In this case, both locations are likely to be sources of proof. But, the copies of defendants' records are in California due to the pending litigation there. Since all relevant documents have been collected, copied, and sent to the offices of trial counsel in California, California seems like the better choice of forum in regard to the relative ease of access to sources of proof.

In considering the convenience of witnesses, we must assess not only the location of the witnesses, but also the nature of their expected testimony and whether they can be compelled to testify. *Peterson v. United States Steel Corp.*, 624 F.Supp. 44, 45 (N.D. Ill. 1985). Plaintiffs allege that the connection of the parties and the case to Illinois is strong because plaintiffs' "purchasing agents, key witnesses for the plaintiffs who dealt directly with the defendants, are located here." (Pl. Opp. p. 6). They also allege that because the events took place all over the world, "discovery will be focused upon where defendants' and plaintiffs' personnel are located, which is clearly not San Francisco" and that plaintiffs' employees are in or closer to Chicago. (Pl. Opp. p. 7). Also, plaintiffs mention that for example, their "purchasing personnel will testify about their inability to get competitive bids . . . " from the alleged conspirators. Finally, plaintiffs' attorney Chris Gair names four employees, two of which reside in Illinois, that are expected to be witnesses in this case because they were involved in the purchase of sorbates. (Decl. of Chris Gair, ¶¶ 3, 4).

5

In response, defendants argue that plaintiffs' employees will not be required to participate extensively in discovery or trial. More importantly, defendants say that it would be inconvenient to make witnesses testify in both San Francisco and Chicago. Defendants also argue that plaintiffs have identified only four witnesses somehow involved in the purchase of sorbates for plaintiffs, and that only two of those witnesses reside in Illinois, and that the convenience of two witnesses should not be a controlling factor when defendants' witnesses are located all over the country, and the world. Defendants argue that witnesses would be required to participate in duplicative depositions and trials, and that because the alleged conspiracy took place outside the United States and involves foreign individuals and entities, the parties would have to travel overseas to depose witnesses and coordinate discovery.

While this all may be true, defendants only speak generally of witnesses and do not identify any specific defense witnesses that would be inconvenienced and this failure weakens their position encouraging transfer. *See Rasmussen v. The West, Inc.*, 1993 U.S. Dist. Lexis 9081 (N.D. Ill. June 29, 1993) (Aspen, J.) (court would not assume witnesses would be inconvenienced where defendant identified no witnesses, other than its president, and offered no evidence that other potential witnesses (1) lived closer to the district to which defendant wanted the case transferred or (2) would be unwilling to testify in the Northern District of Illinois). Nonetheless, neither plaintiffs nor defendants has identified any non-party witnesses who would be outside of the subpoena power of either district. Therefore, any of the witnesses identified by the parties could be compelled to appear in either forum. For the purposes of deciding this motion to transfer, we need not decide which party is correct in regard to whose witnesses are more inconvenienced; rather, we point out that the parties are likely to attempt to secure evidence and witnesses from all over the country, not just Illinois or California. We conclude that the ease of access to sources

of proof weighs slightly in favor of California, if only because many of the relevant documents are already present in that district, not because it is any more or less convenient for the witnesses.

The fourth and final private factor to consider is the convenience to the parties, including their respective residences and ability to bear expense of trial. *CoolSavings*, 53 F.Supp.2d at 1006. Defendants argue that because they are already involved in litigation in California, it is inconvenient for them to litigate the same issues simultaneously in Chicago. While it may be inconvenient for defendants to come to Chicago, it may be equally inconvenient for plaintiffs to go to California - two of the three plaintiffs have offices in Illinois. We will not transfer this case if doing so "'merely transforms an inconvenience for one party into an inconvenience for another party.'" *Id.*, quoting *Greene Manuf. Co. v. Marquette Tool & Die Co.*, 1998 U.S. Dist. Lexis 10656, at *4 (N.D. Ill. July 9, 1998). However, plaintiffs filed a motion to intervene in the action taking place in California, and while plaintiffs say intervention was limited, challenging solely the opt-out provision in the agreed settlement order so that plaintiffs could pursue their own lawsuit, that does not erase the fact that they are a party to the action in California. Moreover, the suit before us now was filed more than one year after the related case was underway in California.

We also consider that neither plaintiffs nor defendants are small companies by any means, and would not be in fiscal jeopardy if forced to try this case in California or in Illinois. In fact, it may be more costly for the parties to be trying cases in two districts at the same time. And, though we typically do not give weight to the location of counsel, the location of counsel may be relevant if it bears directly on the cost of litigating, *see Eugene v. McDonald's Corp.*, 1996 U.S. Dist. Lexis 10193, *6; in this case, both parties' counsel are located in California and are presently working in California on the class action suit involving both plaintiffs and defendants, so the ease with which counsel could appear in California would limit the cost of litigation. Hence, the

convenience of the parties suggests that transfer to the Northern District of California may be appropriate.

Finally, we consider the public factor - the interest of justice - which includes analyzing the courts' familiarity with the applicable law and the desirability of resolving a case in a particular forum, see *SRAM Corp.*, 953 F.Supp. at 260, in addition to the time frame in which cases are disposed of in each forum as well as the resources at stake and whether there is related litigation pending in the Northern District of California. See *Rasmussen*, 1993 U.S. Dist. Lexis 9081, at *9. In other words, this factor "relates to the efficient administration of the court system." *Coffey*, 796 F.2d at 221. In many cases, this factor is determinative, and can override the fact that the inconvenience factors weigh against transfer. See e.g., *Coffey*, 796 F.2d at 220; *Weatherston v. Illinois Fruit & Produce et al.*, 1997 U.S. Dist. Lexis 7101, *4-6; *Herdlein Technologies*, 1992 U.S. Dist. Lexis 1184 at *13. We believe that the interests of justice weigh in favor of transfer.

Plaintiffs' claim involves a federal question, and therefore both districts are equally competent to hear and decide the issues of federal law. Illinois does have an interest in adjudicating injuries to its citizens rights, however, and two of the three plaintiffs are citizens of Illinois. What is significant, although the parties disagree to its extent, is the existence of related litigation pending in the Northern District of California. Both parties concede that normally, related litigation should be transferred to a forum where consolidation is feasible and logical, in an effort to minimize duplication or energy. Both cases involve similar issues and stem from the same factual basis and it would be wasteful of time, energy and resources to permit both to go on simultaneously. Moreover, Judge Legge is familiar with the factual and procedural posture of the consolidated cases, having dealt with the action for over one and one-half years.

Plaintiffs argue that since four of the six defendants have partially settled, there is no longer an active related case in progress in California and that therefore, transferring this case would not

8

save time or resources. It is true that defendants have partially settled with the Class Plaintiffs in the suit in California. However, the suit is still proceeding against defendants Ueno and Chisso, and it is likely that defendants will still be involved in the discovery and litigation yet to take place.

Judicial resources should not be needlessly expended by covering ground already considered by Judge Legge in San Francisco. Both parties have indicated that Judge Legge has issued a number of orders asking the parties to conduct discovery on a variety of issues.[3] The principal purpose behind the consolidation of related cases is to allow one judge to take control of complex proceedings, and to avoid unnecessary duplication in discovery, especially when there are common questions of fact involved in a related case . *Matter of Orthopedic Bone Screw Products Liability Litigation*, 79 F.3d 46, 48 (7th Cir. 1996). Where there is the potential to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, counsel and judiciary, we feel strongly that the interests of justice are well-served by transfer.[4] In balancing the interests of justice, the scale tips in favor of transfer.

---

[3]There is disagreement, however, as to the extent of that discovery. Plaintiffs argue that the orders were purely procedural, and that the documents produced so far are simply the same documents that were produced for indictment. They also argue that the discovery ordered by Judge Legge is limited to jurisdictional discovery, concerning specific issues that have "no relevance to the Dean Foods case." (Pl. Opp. p. 14). Defendants argue that the parties have engaged in discovery, including providing initial disclosures, answering interrogatories, and responding to requests for production. Defendants also point out that the plaintiffs class attorney indicated that ". . . formal discovery in this matter is on going . . . ." (Def. Reply in support of Motion to Transfer, Exh. 1).

[4]We also consider the relative congestion of the dockets of the two forum courts. Plaintiffs argue in their opposition to the motion to transfer that the median time from filing a civil action to the end of trial in a civil jury case is nine months longer in the Northern District of California than in the Northern District of Illinois. However plaintiffs have misread the table's statistics. The median time from filing to the end of trial in a civil jury case is actually negligible -- there is only a two month difference in length of time to trial (27 months in Illinois, 29 months in California), *see* Judicial Business of the United States Courts (Administrative Office of the U.S. Courts 1998) (Table C-10). Therefore, we conclude that this does not affect our determination.

For the foregoing reasons, we grant defendants' motion to transfer this case to the United States District Court for the Northern District of California. It is so ordered.

                                                                                     _____
                                                                                     Marvin E. Aspen, District Court Judge

Dated: 10/18/00